IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DANIELLE HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>THE BUREAUS, INC.,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:20-CV-297-MHC-LTW |

## ORDER

This matter is before the Court on Defendant The Bureaus, Inc. ("The Bureaus")'s post-judgment Motion for Attorney's Fees and Costs[1] ("Def.'s Mot.") [Doc. 42].

I. **FACTUAL BACKGROUND PRIOR TO THE FILING OF THE LAWSUIT**[2]

---

[1] As costs of $692.05 already have been taxed against Plaintiff in this case, The Bureaus' motion with respect to the award of costs is **DENIED AS MOOT**.

[2] These facts are taken from The Bureaus' Statement of Undisputed Material Facts filed in support of its Motion for Summary Judgment [Doc. 23-2] which were deemed admitted by Harris's failure to refute any of them, LR 56.1B(2), NDGa, and by Harris's non-opposition to The Bureaus' Motion for Summary Judgment, Pl.'s Resp. to Mot. for Summ. J. [Doc. 26].

Plaintiff Danielle Harris ("Harris") owed a debt to Capital One, N.A. in the amount of $4,288.00, and The Bureaus received the debt on February 11, 2019. On September 30, 2019, Harris checked her Credit Karma report and viewed The Bureaus' report of the debt. The next month, an individual affiliated with the Credit Repair Lawyers of America ("CRLA") drafted, signed, and sent The Bureaus a one-sentence letter stating that Harris "dispute[d] the above account(s) that you are reporting on my credit files." Harris herself had no knowledge as to why the debt was disputed and did not know who at CRLA drafted, signed, and mailed the letter to The Bureaus. In fact, it was one or more lawyers at CRLA who made the determination to dispute the debt, not Harris.

On October 21, 2019, The Bureaus completed its investigation, found that Harris's "dispute" lacked merit, and sent CRLA the results of its investigation. The next month, The Bureaus reported Harris's debt using compliance condition code "XH," which indicated that the amount was disputed and that the investigation was completed. On December 19, 2019, Harris checked her Credit Karma report which showed The Bureaus reported: "Dispute resolved, reported by grantor." Harris could not state what was inaccurate about this reporting.

## II. PROCEDURAL HISTORY

On January 22, 2020, Harris filed a five-page Complaint in this Court alleging that The Bureaus was attempting to collect a debt of $4,288.00 owed by Harris, that Harris notified The Bureaus that she disputed the debt, and that The Bureaus failed to report her debt as disputed in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Compl. [Doc. 1]. At the time of the filing of the Complaint, Harris was represented by Matthew Landreau of CRLA. Joint Prelim. Report & Disc. Plan [Doc. 9] at 5. As discussed above, when the lawsuit was filed, Harris's attorneys were aware that The Bureaus previously reported a disputed debt and Harris herself had no reason to question that report. Moreover, on February 13, 2020, less than one month after the lawsuit was filed, counsel for The Bureaus sent Mr. Landreau a screenshot showing that it in fact communicated the dispute to the credit bureaus. E-mail from John Bedard to Matthew Landreau (Feb. 13, 2020) [Doc. 42-3] at 2. If that were not enough, The Bureaus also responded to Harris's interrogatories by indicating its report to the credit agencies that Harris's debt was disputed. Def.'s Resp. to Pl.'s First Set of Interrogs. [Doc. 42-5] at 5-6.

After a period of discovery, The Bureaus filed its Motion for Summary Judgment again asserting, *inter alia*, that it did in fact report Harris's dispute of the

3

debt. Mem. in Supp. of Def.'s Mot. for Summ. J. [Doc. 23-1] at 2-3, 6-9. CRLA filed Harris's response to the Motion for Summary Judgment indicating that "[u]ndersigned counsel has reviewed Defendant's motion and has discussed same, and its merits, with Plaintiff. Plaintiff agrees that Defendant forwarded the dispute information in its next regularly scheduled monthly cycle." Pl.'s Resp. to Mot. for Summ. J. [Doc. 26] at 1. CRLA also filed a Motion for Court-Ordered Dismissal pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, based on its review of the summary judgment motion and discussion with opposing counsel, but indicated that The Bureaus would not stipulate to a dismissal. Pl.'s Mot. for Court-Ordered Dismissal at 1-2. The Bureaus responded by asking that its unopposed Motion for Summary Judgment be granted and that Harris's Motion to Dismiss be denied, primarily because Harris was aware prior to filing her lawsuit that The Bureaus reported the account as disputed and The Bureaus intended to seek attorney's fees and costs for bad faith. Def.'s Reply Br. in Supp. of its Mot. for Summ. J. [Doc. 29] at 1-2; Def.'s Resp. in Opp'n to Pl.'s Court-Ordered Dismissal [Doc. 30] at 3-6.

On December 23, 2020, the Magistrate Judge issued a Report and Recommendation on the pending motions. Magistrate Judge's Final Report & Recommendation ("R&R") [Doc. 35]. The Magistrate Judge recommended denial

of Harris's motion to dismiss because: (1) prior to the filing of Harris's complaint, CRLA received the results of The Bureaus' investigation which indicated that the account was disputed, (2) despite knowing The Bureaus reported her debt as disputed, CRLA filed the complaint alleging a violation of the FDCPA, and (3) Harris and/or her counsel "acted in bad faith by filing this lawsuit and prosecuting the action until faced with the possibility of sanctions." R&R at 2-3. The Magistrate Judge also recommended granting The Bureaus' Motion for Summary Judgment based upon the undisputed material facts and Harris's admission that The Bureaus did properly report her debt as disputed "in its next regular monthly cycle." R&R at 6. The Magistrate Judge noted that Daniel Brennan, another attorney with CRLA, entered an appearance as counsel for Harris [Doc. 31] following the filing of the motions to dismiss and for summary judgment, but only weeks prior to the issuance of the R&R. Mr. Landreau withdrew as counsel for Harris shortly thereafter. Mot. to Withdraw [Doc. 32]; Dec. 14, 2020, Order [Doc. 34]. As the same series of actions occurred in another case in this district where the plaintiff was represented by CRLA, Robinson v. WebBank, No. 1:19-CV-2458-MLB, the Magistrate Judge expected that Mr. Brennan would later argue in this case, as he did in Robinson, that Mr. Landreau filed Harris's response to The Bureaus' Motion for Summary Judgment "without

5

the consent or knowledge of Plaintiff or any other person in Plaintiff's law firm" and that Mr. Brennan should be permitted to file an amended response to The Bureau's motion. R&R at 6-8. Even assuming Mr. Landreau engaged in some misconduct, the Magistrate Judge points out that this would not absolve CRLA of its share of responsibility: "A law firm has a duty to supervise its attorneys . . . Mr. Brennan made an entry of appearance in this case over three weeks ago [and] [i]f he wanted an opportunity to correct any alleged misconduct by Mr. Landreau, he should have promptly done so rather than waiting for weeks to raise the argument." Id. at 8-9.

The Magistrate Judge proved to be prescient, because on January 11, 2021, forty (40) days after entering an appearance in this case, Mr. Brennan filed Harris's objections to the R&R, contending that: (1) the statements made by Mr. Landreau in his response to The Bureaus' Motion for Summary Judgment and Harris's Motion to Dismiss "are entirely false," (2) Harris never authorized Mr. Landreau to request dismissal of the case (attaching a verified "Statement" from Harris), and (3) Mr. Landreau never consulted with others at CRLA before filing Harris's motion and response. Pl.'s Objs. to R&R [Doc. 37] at 2-5. As in Robinson, Mr. Brennan also filed a "Motion for Leave to File Amended Response to Def.'s

Motion for Summary Judgment," based upon the actions of Mr. Landreau [Doc. 38].

In its Order overruling Harris's objections, denying CRLA's motion to file an amended response, and adopting the R&R, this Court noted as follows:

> Even if Mr. Landreau filed Harris's response to the summary judgment motion without consulting Harris, this does not excuse Mr. Brennan's failure to move to withdraw Harris's response to the Bureaus' summary judgment motion in the three weeks prior to the issuance of the R&R or failure to make objections to specific findings of the Magistrate Judge. This Court also has reviewed Harris's deposition, and nothing contained in that testimony or the exhibits attached to it would support a denial of the Bureaus' motion for summary judgment.

Jan. 14, 2021, Order [Doc. 39] at 8. Given that there was no pending motion for costs or attorney's fees, the Court made no independent findings as to whether Harris and/or CRLA exhibited bad faith in this case. Id. at 9.

In its current Motion for Attorney's Fees and Costs, The Bureaus contends that an award of fees and costs is authorized under 28 U.S.C. § 1927 because Harris and her attorneys brought the case in bad faith. Def.'s Mot. at 1. Specifically, The Bureaus contends that CRLA drafted and mailed the letter disputing the debt to The Bureaus notwithstanding the fact that Harris had no independent knowledge that there was a disputed debt and that The Bureaus notified CRLA that it properly notified the credit agencies that Harris disputed the debt. Mem. in Supp. of Def.'s Mot. for Att'y's Fees and Costs ("Def.'s Br.") [Doc.

7

42-1] at 5-9. The Bureaus also states that during its defense of the lawsuit, it continued to provide CRLA with evidence that its claim was meritless but that CRLA refused to dismiss the lawsuit. Id. at 10-11.

In response, Harris does not dispute a single alleged fact underlying the basis for The Bureau's motion for attorney's fees under 28 U.S.C. § 1927, but instead argues that The Bureau's motion is untimely because it was not filed within fourteen (14) days after entry of judgment in accordance with the Federal Rules of Civil Procedure. Pl.'s Resp. in Opp'n to Def.'s Mot. [Doc. 46] at 2-3 (citing FED. R. CIV. P. 54(d)(2)(B)). In reply, The Bureaus points out that the time limitation imposed by Rule 54(d)(2)(B) does not apply to motions made pursuant to 28 U.S.C. § 1927 based upon an express exemption of that code section contained in Rule 54. Def.'s Reply in Supp. of Def.'s Mot. [Doc. 47] at 1-3 (citing FED. R. CIV. P. 54(d)(2)(E)). The Bureaus also has filed a Notice of Specification and Itemization of Requested Fees ("Def's Itemization of Fees") [Doc. 48], which seeks $19,656.50 in attorney's fees as a sanction for the bad faith of Harris and her counsel. In response, Harris contends that, if fees are awarded, they should be reduced because one of The Bureaus' attorneys seeking fees did not participate in the defense of this case, the hourly rates are not reasonable, and the time expended

was excessive. Pl.'s Objs. to Def.'s Specification and Itemization of Requested Fees ("Pl.'s Objs.") [Doc. 49].

### III. STANDARD OF REVIEW

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. To justify an award of sanctions under Section 1927, "an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010) (quotations omitted). "An attorney multiplies the proceedings unreasonably and vexatiously only when the attorney's conduct is so egregious that it is tantamount to bad faith." Id. (quotations and citation omitted). Something more than a lack of merit or negligent conduct is needed to support the imposition of sanctions under Section 1927. Amlong & Amlong, P.A. v. Denny's Inc., 500 F.3d 1230, 1241-42 (11th Cir. 2007) ("[N]egligent conduct, standing alone, will not support a finding of bad faith under § 1927" and, therefore, an attorney's conduct "will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney."); see also Schwartz v. Millon Air,

9

Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) (citation omitted) ("'Bad faith' is the touchstone. Section 1927 is not about mere negligence. A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.").

## IV.   DISCUSSION

### A.   The Motion is Timely.

Harris asserts that The Bureaus' Motion for Attorney Fees is untimely under Rule 54(d)(2)(B)(ii) of the Federal Rules of Civil Procedure because it was not filed within fourteen (14) days of judgment entered in the case. However, as pointed out by The Bureaus, Rule 54(d)(2)(E) unambiguously states that subparagraph (B) "do[es] not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927." FED. R. CIV. P. 54(d)(2)(E) (emphasis added). See also Hill v. Clark, No. 2:10-CV-00260-WCO, 2012 WL 13018385, at *4 (N.D. Ga. Aug. 16, 2012), aff'd, 537 F. App'x 888 (11th Cir. 2013) ("The deadline does not apply to 'claims for fees and expenses for violating these rules or as sanctions under 28 U.S.C. § 1927.' FED. R. CIV. P. 54(d)(2)(E); see also FED. R. CIV. P. 54, Advisory Committee Note, 1993 Amendments (noting that the 14-day limit does not 'apply to awards of fees as

10

sanctions authorized or mandated under these rules or under 28 U.S.C. § 1927.'")); Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., No. CV407-042, 2010 WL 11534311, at *1 (S.D. Ga. Nov. 30, 2010) (stating that the fourteen-day deadline in Rule 54(d)(2)(B)(ii) is not applicable to motions brought pursuant to 28 U.S.C. § 1927).

Consequently, The Bureaus' motion under 28 U.S.C. § 1927 is not untimely.

**B.     Because of CRLA's Unreasonable and Vexatious Conduct in Filing and Maintaining a Frivolous Lawsuit, Attorney's Fees Reasonably Incurred by The Bureaus Based on Such Conduct Shall Be Awarded.**

The Court finds that the filing of this lawsuit and failure to dismiss the lawsuit despite numerous opportunities to do so constitute unreasonable and vexatious conduct amounting to bad faith by Harris and her counsel, who were aware at the time the Complaint was filed that the allegations in the Complaint with respect to The Bureaus failing to report a disputed debt were without merit. Moreover, CRLA had opportunities shortly after the lawsuit was filed to dismiss or otherwise resolve the lawsuit after receiving information from The Bureaus' counsel and responses to interrogatories again indicating that, contrary to the allegations of the Complaint, the alleged disputed debt was properly reported. The Bureaus was compelled to defend the lawsuit through the filing of an Answer, making required disclosures under the Court's rules, engaging in discovery, and

11

filing its Motion for Summary Judgment, which led to a response by Harris that conceded every fact asserted by The Bureaus in its motion. Only after the filing of The Bureaus' Motion for Summary Judgment did CRLA attempt to dismiss the lawsuit.

CRLA's conduct in this case was vexatious and unreasonable and resulted in an unnecessary multiplication of these proceedings. The Bureaus is, therefore, entitled to an award of reasonable attorney's fees under 28 U.S.C. § 1927 for the legal services its counsel performed in defense of the case and in preparing its motion for fees.

## V.     Award of Attorney's Fees

On March 24, 2021, The Bureaus filed a Specification and Itemization of Requested Fees, in which it seeks a total of $19,656.50 in attorney's fees. Def.'s Itemization. The Bureaus seeks $18,656.00 in fees for attorney Jonathan K. Aust, which comprises 70.4 hours of time at an hourly rate of $265.00 per hour. Decl. of Jonathan K. Aust ("Aust Decl.") [Doc. 48-1]. The Bureaus also seeks $1,000.50 in fees for attorney John H. Bedard, Jr., which comprises 2.9 hours of time at an hourly rate of $345.00 per hour. Decl. of John H. Bedard, Jr. [Doc. 48-2].

In her response, Harris objects that (1) Mr. Aust did not provide evidence of the reasonableness of his hourly rate, which Harris submits should be $175.00 per

hour (a request that itself is not supported by any evidence), (2) The Bureaus' billing records fail to show that Mr. Bedard spent any time working on the case, and (3) Mr. Aust billed excessively on the case and the amount requested should be reduced by 41.6%. Pl.'s Objs. at 3-8.

When assessing an award of attorney's fees, a district court must calculate what the Supreme Court has labeled the "lodestar" amount. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) ("[T]he lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.") (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)). The method for determining this amount has been clearly established in the Eleventh Circuit:

> In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted) (awarding attorneys' fees pursuant to 42 U.S.C. § 1988). The district court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience on the topic." Id. (quotation omitted). Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity. Barnes, 168 F.3d at 427. In addition, a "well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Id. (quotation omitted).

13

Dial HD, Inc. v. ClearOne Commc'ns Inc., 536 F. App'x 927, 930-31 (11th Cir. 2013). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." Assoc. of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 & n.1 (11th Cir. 2006). "Similarly, those parties opposing fee applications have obligations," namely that "[t]heir objections and proof concerning hours they want excluded must be specific and 'reasonably precise.'" Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010) (quoting Hensley, 461 U.S. at 428).

A.   **Reasonable Hourly Rate for Mr. Aust**

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation and quotation omitted). A plaintiff can establish the reasonableness of hourly rates "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing Norman, 836 F.2d at 1299). What an attorney charges his or her paying clients "is powerful, and perhaps the bast, evidence of his [or her] market rate; that is most likely to be

14

what he [or she] is paid as 'determined by supply and demand.'" <u>Dillard</u>, 213 F.3d at 1354-55 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)).[3]

In seeking attorney's fees, "the burden is on the fee applicant to produce satisfactory evidence—<u>in addition to the attorney's own affidavits</u>—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96 n.11 (1984) (emphasis added); see also <u>St. Claire v. Trauner, Cohen & Thomas, L.L.P.</u>, No. CIV.A. 107CV2082-ODE, 2008 WL 151542, at *1 (N.D. Ga. Jan. 11, 2008) ("The burden of proof [in seeking attorneys' fees] lies with the applicant, and more is required than the affidavit of

---

[3] The Court has also considered the factors set forth in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), <u>abrogated on other grounds</u>, <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 109 (1989), which the Eleventh Circuit has indicated remain viable in assessing a reasonable hourly rate. See <u>Loranger</u>, 10 F.3d at 781 n.6 ("Although its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the <u>Johnson</u> factors in establishing a reasonable hourly rate."). The <u>Johnson</u> factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. <u>Johnson</u>, 488 F.2d at 717-19.

15

the attorney performing the work. Evidence of rates actually billed and paid in similar lawsuits, direct evidence of charges by lawyers under similar circumstances, or opinion evidence are examples of sufficient proof.") (citing Blum, 465 U.S. at 895-96 n.11).

Mr. Aust has been practicing law for twelve years and has developed an expertise representing creditors, debt collectors, and debt buyers in litigation relating to the FDCPA. Aust Decl. ¶ 4. Mr. Aust has appeared as attorney of record in over 200 cases in this Court in last decade. Id. ¶ 6. However, Mr. Aust has produced no evidence that the hourly rate he seeks is a reasonable one. Nevertheless, in spite of Mr. Aust's failure to meet his burden of proof, "the court can rely upon its own experience to determine a reasonable fee even when faced with an inadequate fee application or fee rates which seem excessive, and the court should still award a fee where warranted." Feliciano et. al. v. Wehunt, No. 1:09-CV-03130-JOF, 2010 WL 1565493, at *3 (N.D. Ga. Apr. 19, 2010) (citing Norman v. Hous. Auth., 836 F.2d 1292, 1303 (11th Cir. 1988)). The Court has considered Mr. Aust's experience and the fact that he bills clients at the same rate he requests from this Court. The Court is also aware that attorneys with similar experience as Mr. Aust in cases brought under the FDCPA have had hourly rates approved higher that the rate sought by Mr. Aust. See, e.g., Gordon v. So. Credit

Bureau Corp., No. 5:19-cv-63 (MTT), 2019 WL 3937630, at *2 (M.D. Ga. Aug. 20, 2019) (finding that $275.00 per hour is a reasonable hourly rate in a case brought under the FDCPA); Johnson v. Velocity Invs., LLC, No. 1:17-cv-1161-WSD-JKL, 2018 WL 3061926, at *3 (N.D. Ga. Mar. 12, 2018) (concluding that $325.00 is a reasonable hourly rate for someone engaged in consumer protection litigation for sixteen years). Accordingly, the Court finds that a reasonable rate for Mr. Aust is $265.00 per hour.

### B. Time Expended by Mr. Bedard

Harris contends that The Bureaus' billing records show that Mr. Bedard "did not spend any time working on the defense of this case." Pl.'s Objs. at 5. In reply, The Bureaus state that Mr. Bedard "communicated with CRLA at the beginning of the case and provided it with evidence that Harris'[s] claims lacked merit" but did not bill the client for that time. Def.'s Reply Br. in Supp. of its Specifications and Itemization [Doc. 50] at 4-5. The only indication in the billing records submitted to the Court of any time expended by Mr. Bedard that was billed to the client is 1.5 hours on February 15, 2021, for drafting or revising The Bureaus' brief in support of its motion for sanctions and costs [Doc. 48-2 at 33]. The Court will not allow that time to be assessed but will permit .3 hours for the correspondence between Mr. Bedard and Mr. Landreau on February 12-13, 2020, in which Mr. Bedard

17

provided evidence to CRLA that its claim was without merit. At Mr. Bedard's hourly rate of $345.00, which this Court finds reasonable, that would amount to a total attorney's fee of $103.50.

### C.     Reasonable Number of Hours Expended by Mr. Aust

With respect to documenting the appropriate number of hours spent on a case, the Eleventh Circuit has stated that counsel for the prevailing party

> should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303). And the Court must bear in mind "that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed . . . not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306. In opposing the number of hours claimed, Defendants have an obligation to make specific and "reasonably precise" objections and proof concerning hours they want excluded from any award. Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010) (citing Hensley, 461 U.S. at 428).

Of the 70.4 hours billed by Mr. Aust on this case, Harris specifically objects[4] to the following: (1) 18.6 hours to draft and revise The Bureaus' Motion for Summary Judgment, (2) 3 hours to draft responses to discovery, and (3) the hours that Mr. Aust spent seeking fees against Harris. Def.'s Objs. at 6-8. The Court has reviewed the itemized time entries for Mr. Aust [Doc. 48-1 at 5-28[5]] and finds the hours claimed to be reasonable, except the Court reduces the time spent by Mr. Aust on researching and preparing the motion for attorney's fees/sanctions from 21.6 hours (which the Court finds excessive) to 15 hours (approximately a thirty percent reduction). The Court specifically overrules the objections to the time spent by Mr. Aust preparing The Bureaus' Motion for Summary Judgment and responding to discovery, which the Court finds to be reasonable. Therefore, the Court approves for Mr. Aust a total of 63.8 hours at an hourly rate of $265.00, for a total attorney's fee award for Mr. Aust of $16,907.00.

---

[4] To the extent Harris references "numerous other examples of excessive hours" but does not specifically asserted "reasonably precise objections," the Court will not speculate as to what those other examples would be and does not reduce the number of hours claimed based on such generic objection.

[5] Pages 30-35 of this submission appear to be duplicative of entries contained on pages 5-28.

19

## VI. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant The Bureaus, Inc.'s Motion for Attorney's Fees and Costs [Doc. 42] is **GRANTED IN PART and DENIED IN PART**. The Motion for Attorney's Fees is **GRANTED IN PART**, and Defendant is awarded a total of $17,010.50 in attorney's fees under 28 U.S.C. § 1927 against Plaintiff Danielle Harris and her counsel the Credit Repair Lawyers of America. The Bureaus' motion with respect to the award of costs is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 21st day of June, 2021.

_____
MARK H. COHEN
United States District Judge